ROBERT SPROULE *v.* R. A. FREDERICKS.

1. CONSTITUTION 1890.  *Enactment.  Ratification not necessary.*

   The convention assembled in this state pursuant to the act of 1890 (Laws, p. 53), by which it was called "to revise or amend the present constitution, or enact a new constitution, "represented the sovereignty of the state, and ratification by the people of the constitution enacted by it, was not necessary to its validity.

2. CONSTITUTIONAL LAW.  *Suffrage.  State regulation.  Sovereignty.  Act of Congress.*

   No limitation upon the right of this state to prescribe qualifications for suffrage exists, except that contained in the constitution of the United States and its amendments, which prohibit discrimination on account of race, color or previous condition of servitude.  The sovereignty of the state, in this respect, is not affected by the act of congress approved February 23, 1870, which, in re-admitting Mississippi to representation in congress, assumed to make it conditional upon the state's preserving the then existing qualifications for suffrage.

3. CONTESTED. ELECTION.  *Evidence.  Illegal votes.  Fraud.*

   In a proceeding to contest the election to a county office, it is sufficient for the contestant to allege and show that he was deprived of his rightful majority by the fraudulent practices of the managers at a certain precinct in returning a greater number of votes than were actually cast, and receiving votes of persons not qualified electors under the constitution, and votes which had been marked and furnished to voters by others in disregard of the constitution.

---

---

4. CONTESTED ELECTION. *Evidence of fraud. Constitution of* 1890.

> Without regard to whether the provisions of the constitution of 1890, and
> its ordinance regulating elections, are mandatory or directory, fraudu-
> lent conduct, whereby legal votes are received and counted, changing
> the result of the election, may always be shown.

FROM the circuit court of Warren county.
HON. J. D. GILLAND, Judge.

Sproule and Fredericks were opposing candidates for the
office of assessor of Warren county, at the general election
held in November, 1891. Fredericks was declared elected by
a majority of eight votes. Sproule filed his petition to con-
test the election. The ground mainly relied on, as set out in
the petition, is as follows:

"Petitioner further shows that, of the seventy votes alleged
to have been cast at said precinct (Brunswick), and which
votes were counted against him, and for the said R. A. Fred-
ericks, forty-one were cast by persons who could neither read
nor write, and he avers that they were not afflicted with blind-
ness or any other physical disability which authorized any one
to mark their ballots for them; nevertheless, by some fraudu-
lent contrivance, said forty-one persons were aided and abet-
ted in such way that they were furnished ballots already duly
marked and provided by persons not authorized so to do,
which were, by collusion with the officers holding said elec-
tion, received and deposited, by reason whereof said pre-
tended votes and ballots are false and fraudulent."

This ground of contest was held bad on demurrer, the court
(presumably) holding that the provision of the election ordi-
nance of the constitution was directory and not mandatory.

The contestant filed an amended petition, setting up other
grounds of contest, and, issue having been joined thereon, the
cause was submitted to be tried upon the evidence before the
judge in vacation without a jury. It is not necessary to con-
sider the amended petition, or the evidence in support of it,
since the only question passed on by the court, aside from the

validity of the constitution of 1890, arose under the allegations of the original petition, and the evidence offered in support of them, which was excluded by the court.

The plaintiff offered, under the allegations of the original petition, to prove by one Loudon, and a number of other witnesses, that about forty persons voting at Brunswick precinct were illiterate, not being able to read or write, and were not physically disabled, lame or blind, and that they did not mark their tickets, or otherwise conform to the law providing for the method of marking and distributing ballots; that one Kiger, the officer who distributed the tickets at the polls, had marked the tickets for these persons, and that they did not know for whom they were voting, but merely voted at Kiger's request; that the inspector who received the ballots knew that Kiger had assisted these voters to mark their tickets, and that they were unable to read or write.

Petitioner also offered to show by one Davis, an inspector or judge at said precinct, that the receiving of the ballots, so cast by these illiterate voters, was the result of collusion between the judges of the election and Kiger, in order to defeat the election of petitioner. From a judgment in favor of contestee this appeal is prosecuted.

The question mainly argued by counsel is, whether the provisions of the constitution and the ordinance regulating suffrage are mandatory or directory; but, since the court holds that the allegations of the petition are sufficient, and the evidence offered in support of it is competent, independently of the true meaning of the constitution and ordinance as to this, it is not necessary or proper to set out the arguments on this question.

It is urged by appellee, in argument, that the provisions of said constitution of 1890 are violative of the act of congress, approved February 23, 1870, entitled "An act to admit the state of Mississippi to representation in the congress of the United States." This act contains the following provisions: " The state of Mississippi is admitted to representation in

congress as one of the states of the union upon the following fundamental conditions:

"*First.*—That the constitution of Mississippi shall never be so amended or changed as to deprive any citizen, or class of citizens, of the United States of the right to vote, who are entitled to vote by the constitution herein recognized, except as a punishment for such crimes as are now felonies at common law, whereof they shall have been duly convicted under the laws equally applicable to all the inhabitants of said state; *Provided*, that any alteration of said constitution, proscriptive in its effects, may be made in regard to the time and place of residence of voters.

"*Second.*—That it shall never be lawful for the said state to deprive any citizen of the United States, on account of his race, color and previous condition of servitude, of the right to hold office under the constitution and laws of said state, or, upon any such ground, to require of him any other qualifications for office than such as are required of all other citizens.

"*Third.*—That the constitution of Mississippi shall never be so amended or changed as to deprive any citizen, or class of citizens, of the United States of the school rights and privileges secured by the constitution of said state."

The constitution of Mississippi adopted in 1869, provided, in reference to franchises, that "all male inhabitants of this state, except idiots and insane persons, and Indians not taxed, citizens of the United States or naturalized, twenty-one years old and upwards, who have resided in this state six months, and in the county one month, next preceding the day of election at which said inhabitant offers to vote, and who are duly registered according to the requirements of section 3 of this article, and who are not disqualified by reason of any crime, are declared to be qualified electors."

Section 241 of the constitution of 1890 is as follows: "Every male inhabitant of this state, except idiots, insane persons and Indians not taxed, who is a citizen of the United States,

twenty-one years old and upwards, who has resided in this state two years, and one year in the election district, or in the incorporated city or town in which he offers to vote, and who is duly registered as provided in this article, and who has never been convicted of bribery, burglary, theft, arson, obtaining money or goods under false pretenses, perjury, forgery, embezzlement, or bigamy, and who has paid, on or before the first day of February of the year in which he shall offer to vote, all taxes which may have been legally required of him, and which he has an opportunity of paying according to law, for the two preceding years, and who shall produce to the officers holding the election satisfactory evidence that he has paid said taxes, is declared to be a qualified elector; but any minister of the gospel, in charge of an organized church, shall be entitled to vote after six months' residence in the election district, if otherwise qualified."

Section 242 of said constitution directs that the legislature shall provide by law for the registration of persons entitled to vote, and prescribes the oath to be taken by those offering to register.

Section 244 of said constitution provides that, on and after the first day of January, A.D. 1892, every elector shall, in addition to the foregoing qualifications, be able to read any section of the constitution of this state, or he shall be able to understand the same when read to him, or give a reasonable interpretation thereof.

The election ordinance adopted by the constitutional convention of 1890 provides the method for conducting elections. This ordinance contains, among other provisions, one requiring every voter, unless prevented by blindness or other physical disability, before casting his ballot, to retire into a voting apartment, and prepare his ballot by marking it with ink, the effect of which provision is that the voter must possess, to a limited extent, the ability to read.

*L. W. Magruder* and *Gibson, Henry & Bien*, for appellant.

*Miller, Smith & Hirsh,* for appellee.　　　　　　　　　'

It is submitted that the constitution of 1890 is invalid, because never ratified by the people. Jamison on Con. Conventions, §§ 415, 418, 479, 520; Cooley, Con. Lim., 41.

True, neither the constitution of 1817 nor that of 1832 was submitted for ratification, but the former was passed pursuant to an act of congress, while the latter was framed pursuant to a provision contained in the former. The constitution of 1869 was at last, in recognition of the prevailing principle, submitted for ratification. This constitution prohibited any change, alteration or amendment except upon submission to popular vote.

We submit also that the act of congress, re-admitting the state into the union, was violated by changing the basis of suffrage.

WOODS, J., delivered the opinion of the court.

The validity of the constitution of 1890 is called in question by counsel for appellee, in a supplemental brief filed recently, by consent of the court; and, as the challenge meets us on the threshold of the case, we proceed at once to its consideration briefly.

In support of this view of the invalidity of the constitution, two propositions are asserted:

1. That a constitutional convention has power only to prepare or frame the body of a constitution, and that, when prepared or framed, the instrument is of no force or effect until ratified by a popular vote of the people; and the constitution of 1890, having never been submitted to or ratified by the people, is invalid.

2. That the changes made by the constitution in the basis of suffrage are violative of the act of congress re-admitting the state of Mississippi into the union in the year 1870, and invalidate that instrument.

With confidence we reject both propositions as unsound. It will be remembered that the case at bar is free from the

difficulties which are supposed by some writers to arise out of a failure or refusal of a constitutional convention to yield to the direction of the legislature which summoned it that the constitution framed shall be submitted to the people for ratification. ⸍The act of the legislature which provided for the assembling of the constitutional convention of 1890, declared that the end sought to be attained, the work to be done, was the revision and amendment of the constitution of 1869, or the *enactment* of a new constitution; and it did not attempt to limit the powers of the convention by imposing, or seeking to impose, upon that sovereign tribunal the mere legislative will that the constitution enacted should be submitted to the people for ratification. We have simply the case of a constitutional convention *enacting* a new constitution, and putting it into effect without an appeal to the people, in strict conformity to the legislative call which assembled it. ·

We have spoken of the constitutional convention as a *sovereign body*, and that characterization perfectly defines the correct view, in our opinion, of the real nature of that august assembly. It is the highest legislative body known to freemen in a representative government. It is supreme in its sphere. It wields the powers of sovereignty, specially delegated to it for the purpose and the occasion by the whole electoral body, for the good of the whole commonwealth. The sole limitation upon its powers is, that no change in the form of government shall be done or attempted. The spirit of republicanism must breathe through every part of the frame-work, but the particular fashioning of the parts of this frame-work is confided to the wisdom, the faithfulness and the patriotism of this great convocation representing the people in their sovereignty.

The theorizing of the political essayist and the legal doctrinaire, by which it is sought to be established that the expression of the will of the legislature shall fetter and control the constitution-making body, or, in the absence of such at-

tempted legislative direction, which seeks to teach that the constitutional convention can only prepare the frame of a constitution and recommend it to the people for adoption, will be found to degrade this sovereign body below the level of the lowest tribunal clothed with ordinary legislative powers. This theorizing will reduce that great body, which, in our own state at least, since the beginning of its existence, except for a single brief interval in an exceptional period, by custom and the universal consent of the people, has been regarded as the repository and executor of the powers of sovereignty, to a mere commission, stripped of all power, and authorized only to make a recommendation.

Whatever may be the safer and wiser course, as to putting into operation the completed work of the constitutional convention, the opinions of the political theorists which we are considering, will be found to rest upon grounds largely imaginary and fanciful. The constitutional convention itself, according to this theory, is looked upon with suspicion and distrust, as being the introduction into our governmental system of a revolutionary device; the chosen representatives of the sovereign people are dreaded, as likely to prove unfaithful to their mighty trust, and the liberties of the people are in danger of subversion.

This succinct statement of the grounds of these political theorists will demonstrate the unreal foundation upon which their teachings rest. The general judgment of the people of our own state has practically and strikingly repudiated the theory, from the foundation of the government. The usage in Mississippi, with a solitary exception in an extraordinary conjuncture of public affairs, gives it no support. That the government has lived from its birth to this hour with no valid fundamental law on which to rest, except for a brief interval, cannot be true.

There is as little ground for the second branch of the contention. The regulation of the right of suffrage belongs to the state, and the only limitation thereon to be found in the

constitution of the United States, or the latest amendments thereto, will be found to be the prohibition of discrimination against persons on account of race or color. It is idle consumption of time to talk of this as at all doubtful. The supreme court of the United States has more than once affirmed it. Despite the act of congress referred to, when the state was re-admitted to her place in the federal union, she was restored to all her rights, dignities and powers. She was admitted as the equal of any other state, with the same power to regulate the right of suffrage within her borders enjoyed by the other states. But the contention is so manifestly untenable, and has been so effectually disposed of by the utterances of the supreme court of the United States, that we decline to say more.

The error assigned to the action of the court in sustaining the demurrer of the appellee to the petition, and in excluding the evidence offered by the appellant of N. Loudon and others, in support of the charges of fraud made in the petition, is well taken. The petition charged that the appellant received a majority of the legal votes cast, and very much in addition, by which fraud in the conduct of the election at Brunswick box was detailed; and the evidence of Loudon and others, offered on trial and excluded, if true, stamps the returns from that box as false and fraudulent.

Without interpreting the provisions of the constitutional election ordinance, and independently of the true meaning of the provisions of this ordinance, the petition and excluded evidence, under the general law—the common law—of elections, averred and would have shown, or tended to show, such fraudulent practices of the election officers as would require the revision, if not the rejection, of the returns by a court of competent jurisdiction. The petition, in effect, charged that by fraud forty-one votes were illegally cast at Brunswick, which, by collusion with the election officers, were received and counted for appellee, and the excluded evidence went directly and specifically to the support of this

charge. The demurrer should have been overruled, and the evidence of N. Loudon and others should have been received. See *Word* v. *Sykes*, 61 Miss.; McCrary on Elections, chapter 16; Paine on Elections, pp. 416 and 502.

Whatever the true interpretation of §§ 241 and 242 of the new constitution and of the election ordinance of the convention may be, it is certain that neither was designed, in whole or in part, to make the electors the mere creatures for registering the will and choice of the officers of the election. It is clear that the conversion of these officers into partisan managers and political *bosses* was not the purpose of the constitution or ordinance.

*Reversed and remanded.*