STATE *ex rel.* DENMAN, DIST. ATTY., *v.* CATO.

[95 South. 691. In Banc. No. 23159.]

1. CONSTITUTIONAL LAW. *Amendment must receive majority of votes cast at election.*

Under section 273, Constitution of 1890, a proposed amendment to the Constitution to be adopted must receive a majority of all

the votes cast at the election at which the amendment is voted upon, and an amendment is not adopted which failed to receive a majority of the votes cast, including all those voting at the election, whether they vote for or against the amendment or only for candidates for office.

2. CONSTITUTIONAL LAW. *In absence of correct certification, it will 'be presumed that highest number of votes cast for any officer or measure represented number of votes cast at election.*

   In the absence of a correct certification of the number of electors voting at an election at which a constitutional amendment is voted upon, the court must presume that the highest number of votes cast for any officer or measure represented the number of votes cast at the election.

3. LEVEES AND FLOOD CONTROL. *Law providing for nomination of election of commissioners of levee district and for filling vacancies held unconstitutional.*

   Chapter 166, Laws of 1922, entitled "An act to fix the term of the levee commissioners for the Yazoo-Mississippi Delta levee district and the Mississippi levee district; to provide for the nomination of candidates for the office and for the election of the commissioners of said districts; and for the filling of vacancies in such office," is violative of the Constitution of 1890, section 231, which vests in the governor the power not only to fill vacancies caused by death, resignation, removal, or other disqualification, but also to appoint successors in office upon the expiration of the terms of the commissioners.

APPEAL from circuit court of Tallahatchie county.

HON. GREEK L. RICE, Judge.

*Quo warranto* by the state, on the relation of Richard Denman, district attorney, against E. V. Cato. From a judgment for defendant, plaintiff appeals. Affirmed.

*Hays, Stingily & Whitten, E. F. Noel, Moody & Williams, Cutrer, Smith & Cutrer and S. L. Gwin,* for appellant.

The power of appointment resides, in our state, primarily in the people, and it must have been foreseen that at some time or other, the people would provide in their own way for the selection of their own representatives up-

on these important boards. For that reason the Constitution did not prohibit the legislature from providing for the selection of levee commissioners at some future time, if the legislature should deem wise and for the best interests of the levee district. The first subdivision of the sentence limited the requirement for appointments to be made on the expiration of the term of the present levee commissioners. There was no provision in the constitution that they, the present commissioners, and their successors in office, should, successively, be appointed by the Governor. So long, perhaps, as the legislature did not provide otherwise for the selection of levee commissioners, the Governor would lawfully continue to appoint under the general law to fill vacancies. A vacancy in an office exists when there is an unexpired part of a term of office without a lawful incumbent, or when the person elected or appointed to an office fails to qualify, or when there has been no selection to fill an office at the time appointed by law, and whenever there is a failure of an occupant of an office occasioned by death, resignation, removal or otherwise. *State* v. *Hays*, 91 Miss. 755, 765, 766; *Combs* v. *Eversole,* 120 Ky. 346; *Mays* v. *Bassett,* 125 Pac. 609, 17 N. M. 193.

In the consideration of this feature of the case, we call attention to the fact that ever since the Constitution of 1890 went into effect, under the plain language of the Constitution, all appointments of levee commissioners have been, strictly speaking, appointments made to fill vacancies, which have occurred or were about to occur. Nowhere in the Constitution has it been provided that the right to make appointments to fill vacancies occurring or about to occur, would and does preclude the legislature from providing for the filling of such vacancies otherwise than by the act of the Governor.

The *residuum* of power was and is vested in the people. There is put no limitation upon the exercise of that power to its fullest extent. The legislature was and is authorized

to provide for the filling of such vacancies and for the filling of the offices according to its judgment of the best method to pursue in the administration of levee affairs. This court has held that the legislature is vested with full power to control these administrative functions. *Franklin* v. *Ellis,* 93 So. 738, Advance sheets, No. 9.

Constitutional provisions apparently limiting legislative action dealing with levee affairs, have been considered by the court, and uniformly the court has held that such a construction will be placed upon such legislation as to avoid a conflict between the law and the Constitution. This was true in the case of *Board of Levee Commissioners for the Yazoo-Mississippi Delta* v. *Houston,* 81 Miss. 619. In that case, a statute was passed by the legislature imposing a privilege tax upon vocations exercised on the river side of the levee. This act was assailed as unconstitutional because the Constitution provides in the chapter on levees, section 238, that "no property situated between the levee and the Mississippi river, shall be taxed for levee purposes." In passing upon the question, the court held, that the act was constitutional, and that the constitutional provision must be strictly construed, and that the property meant by the Constitution, was real estate.

In the same way the court dealt with another provision of the Constitution in the case of *Bobo* v. *Yazoo-Mississippi Delta Levee Commissioners,* 92 Miss. 792, where it was contended that the statute in question was in conflict with section 234 of the Constitution, which prohibited the legislature from passing certain legislation affecting the taxation or revenue of the district. The court held that the provision of the Constitution "had in mind alone, a law which would increase or diminish the rate of taxation or amount of revenue to be derived from taxation for the protection of the people of this district by the construction of levees." Same case, 812.

It would be stretching the language of the Constitution, to hold that the provisions of chapter 166 of the

Laws of 1922, are directly in conflict with the Constitution. The general scope and purpose of that law was and is simply to provide for the selection of levee commissioners, and not to continue in effect a provision of the Constitution under which the Governor is successively making appointments only to provide for the filling of vacancies occurring or about to occur. When the selection is once made by election, then successive elections will provide successors to those first selected, and the power to make appointments to fill vacancies will then be exercised by the Governor only when vacancies occur from some subsequent cause recognized by the law.

The position which we maintain in reference to the construction of section 231, as providing for the making of appointments to fill vacancies, is borne out by other portions of the Constitution. It is to be observed that when it was the purpose of the framers of that instrument to provide for a constitutional permanency of the power to make appointments, that purpose was expressed by them in proper phraseology.

For instance: When the question was presented for action by the Constitutional convention, on the selection of judges of the supreme court, the Constitution, section 145, expressly provided that the Governor should make appointments "by and with the advice and consent of the senate.

When the question arose before the constitutional body, as to filling vacancies upon the supreme bench, that matter was particularly and specially dealt with by the provisions of section 151 of the Constitution. When the question of the selection of judges of the circuit and chancery courts was under discussion and determined upon, section 153 provided that they should be appointed by the Governor, with the advice and consent of the senate, as with the judges of the supreme court. When it came again, to the question of filling vacancies in the office of judge or chancellor, section 177 provided particularly how such appointments should be made, and how such vacancy should be filled.

In the same way, when the question came up as to the filling of vacancies in the membership of the levee board, section 231 provided how the same should be done, and finally by the provisions of section 103, it was ordained that "in all cases not otherwise provided for in this Constitution, the legislature may determine the mode of filling all vacancies in all offices, and in cases of emergency, provisional appointments may be made by the Governor or continue until the vacancy is regularly filed."

With respect to levee commissioners, the power to make appointments existed under section 231, until the legislature determined otherwise, and having determined otherwise than that vacancies should be filled by appointment, this action of the legislature is not to be stricken down as unconstitutional. Dealing particularly with the questions which we have been discussing heretofore, the decision of this court in the case of *Miller, Auditor, v. State ex rel. Russell, District Attorney,* recently handed down, seems to settle all the questions which we have heretofore been discussing, wholly in favor of the appellant. Certainly it cannot be said that the act of 1922, is in all respects unconstitutional beyond reasonable doubt, and for that reason, we submit that the legislation should be upheld.

*Moody & Williams,* for appellant.

Question presented. Is it necessary that it shall appear that, of the entire vote cast for and against the proposed amendment, only a majority thereof were cast in favor of it?

This question is certainly presented by the record in this case. If answered in the affirmative then undoubtedly the amendment, and the act of the legislature in question, is valid. It is our purpose to limit this brief, to a discussion of that one question. Further, we shall first base our argument solely on section 273, as it now stands.

We are not unaware that for this court to answer the question in the affirmative, based on section 273, as it now stands, it is necessary that, as to this point, the opinion

in the case of *State* v. *Powell,* 77 Miss. 543, be overruled. That the opinion in that case, as to that point is unsound, is, of course, a bare assertion. 77 Miss. 578; *Sproule* v. *Fredericks,* 69 Miss. 898-905; *Ratliff* v. *Beale,* 74 Miss. 247; *Williams* v. *State of Mississippi,* 24 Law Ed. (U. S. 1012); 77 Miss. 583; *Stebbins* v. *Judge of Superior Court,* 66 N. W. 594; *Round* v. *Railway Company,* 45 Miss. 579.

Second proposition. Further, if, by the aplication of well-settled principles of interpretation and construction, section 273 can be rendered intelligible, such an intelligible meaning should be given it even though the public policy, thus assumed, is not carried out, otherwise it would be "a reproach to the court, and a judgment proceeding on policy rather than upon principle." 12 C. J. 703; *Green* v. *Weller,* 32 Miss. 650; *United States* v. *Fisher,* 1 Cranch (U. S.) 244 (Fed. Cas. No. 15, 101; *Newell* v. *People,* 7 N. Y. 97; *Denn* v. *Reid,* 10 Pet. (U. S.) 524 (9 L. Ed. 519); *Leonard* v. *Wiseman,* 31 Md. 204; Cooley, Con. Lim. 57; *Hawkins* v. *Carroll County,* 50 Miss. 537-759.

"An amendment to the Constitution under section 273, Constitution of 1890, making its adoption depend upon its securing the votes of a majority of the qualified electors voting, has not been adopted if it failed to receive a majority of the votes cast, including all those voting at the election, whether they vote for or against the amendments or only for candidates for office.

You will note that the opinion does not hold that the amendment must receive a majority of the highest vote cast for any officer or other measure, but that it must receive a majority of the votes cast, including all those voting at the election, whether they vote for or against the amendments or only for candidates for office.

Section 114 provides that the "returns of all elections by the people shall be made to the secretary of state in such manner as shall be provided by law." Had it been intended that the returns shall show the total vote cast at the elec tion, why not say so?

Again section 140 provides for the total vote cast for Governor, and further that "the house shall ascertain and count the vote of each county and legislative district," for Governor, "and decide any contest that may be made concerning the same." Thus it is clear that the total vote cast at the election (that is a regular election) cannot be determined from the returns made to the secretary of state. It is evident, therefore that the Constitution itself did not provide how the total vote cast at the election, or any election might be ascertained. As it did not, how can it possibly be contended that it was their intention that a proposed amendment should receive a majority of the votes cast at the election?

We refer to the case of *Green* v. *State Board of Canvassers,* 5 Idaho, 130, 95 Am. St. Rep. 169. *Green* v. *State Board of Canvassers,* 5 Idaho 130, 47 Pac. 259, 95 Am. St. Rep. 169 et seq.; *State* v. *Jones,* 64 So. 252.

In conclusion it may be suggested that the will of a people—a nation—takes concrete form in the state. This will, as even Rousseau admits, need not be the will of the majority. At any rate it is not the expression of the will of a majority of the people when a Constitution, which, creates the agency—the government—to express such will, is adopted. No Constitution was ever adopted by a majority of all the people. It is the active, never the passive, will which finds expression. The qualified elector, it is true, is primarily designated to express the will of a people, yet, even as to that, it is only the active expression that counts. As to the Constitution which creates, and the election of officers to administer, the government, this is certainly true. This, we submit, is the rule and when there is an exception such exception is always, as it should be, clearly—not ambiguously—stated.

*Maynard, Fitzgerald & Venable,* for appellees.

Nearly twenty-two full years ago, in the case of *State* v. *Powell,* 77 Miss. 543, this court, after a thorough con-

sideration and discussion of the subject, decided that under the Constitution of the state, section 273, an amendment to be constitutionally adopted must receive a majority of the votes cast at the election wherein the amendment is voted upon. In that case and those subsequent, the highest vote cast was taken as being the vote cast at the election for purposes of computation. This procedure was according to sound precedent and principal. *Hawkins* v. *Supervisors*, 50 Miss. 735.

This construction of the Constitution has been consistently held to from that day to this, receiving the sanction directly, or by necessary implication in the cases of *State* v. *Brantley*, 113 Miss. 786; *State* v. *Jones*, 106 Miss. 522; *Joseph Power, Secretary of State*, v. *Robertson*, 93 So. 769.

Counsel, however, notwithstanding the uniform ruling of this court, attack the construction given to section 273, contending that as *res nova* the construction is erroneous.

We say that the construction is correct: First: It is consistent with, and no other construction is consistent with, the language of the statute. Second: The construction given to section 273 by this court is in accordance with the theory of written constitutions under which the Constitution was adopted by the people. Third: It forwards a uniform policy of the people of the state, as shown by previous similar sections of prior Constitutions. Fourth: It is a wise construction.

We realize, of course, that the test is: What did the people mean, and we submit the above considerations as showing that the people meant the construction which the court has given to the section. *Rhode Island* v. *Massachusetts*, 12 Peters, 722; *Knowlton* v. *Moore*, 178 U. S. 87; *Tennessee* v. *Whitworth*, 117 U. S. 147. Second: The construction given by the court is in accordance with the theory of written Constitutions. Third: The construction which this court has given to this section is in accordance with the uniform policies of the state as shown by similar sections of prior Constitutions.

Under language more or less similar to that under review it has been held that a majority of all the votes cast at an election are necessary for adoption, a majority of the votes cast on the particular proposal not being sufficient. *In re Denny,* 156 Ind. —) 104 N. E. 359; *Rice* v. *Palmer,* 78 Ariz. 439, 96 S. W. 396; *State ex rel.* v. *Foraker,* 46 Ohio State, 677, 23 N. E. 491; *State ex rel.* v. *Babcock,* 17 Nebr. 188, 22 N. W. 779; *Knight* v. *Shelton,* 134 Fed. 423; *Santa Rosa* v. *Bower,* 142 Calif. 299, 75 Pac. 829; *In re Davis,* 62 Kan. 231, 61 Pac. 890; *Baynard* v. *Kling,* 16 Minn. 249; *State ex rel.* v. *McGown,* 138 Mo. 187, 39 S. W. 771; *State ex rel.* v. *Wilson,* 129 Mo. App. 242, 108 S. W. 128; *Atkins* v. *Leien,* 10 So. Dak. 436, 73 N. W. 909; *Sternberg* v. *State,* 40 Nebr. 127, 69 N. W. 849.

Again, under the construction contended for, it has been the duty of the legislature throughout all these years to provide a permanent method for the selection of the members of the levee board, and not leave their appointment to the exercise of a mere emergency power of the governor. The construction contended for convicts the legislature of neglect of duty.

Since such a construction will never be placed upon the conduct of public officers unless one is irresistibly driven to it, their conduct in not providing a law will be imputed to the fact that by contemporaneous and continuous construction it has been thought that the power of appointment was placed by the Constitution in the Governor because otherwise the legislature would certainly have done its duty.

Our investigation has revealed to us no similar constitutional provision receiving the construction contended for. With all due deference, we believe it to be without merit.

*E. J. Bogen, Marcus L. Kaufman,* and *Clayton D. Potter,* for appellee.

Is it sufficient for its ratification that it shall appear that, of the entire vote cast for and against a proposed amend-

ment only a majority thereof were cast in favor of it? It is well settled that the question of whether or not a constitutional amendment has received the required majority of the votes cast is a judicial question. *Green* v. *Weller,* 32 Miss. 650; *Sproles* v. *Frederick,* 69 Miss. 898; *State* v. *Powell,* 77 Miss. 543; *State* v. *Jones,* 106 Miss. 522, 64 So. 241; *State* v. *Brantley,* 113 Miss. 786; *Stebbins* v. *Judge,* 108 Mich. 698; *State* v. *Powell,* 77 Miss. 543.

In the case above cited it clearly appears that the vote required by section 273 of the Constitution to ratify a proposed constitutional amendment is a majority of all those voting at the election at which the constitutional amendment is voted on, regardless of whether or not they vote on the amendment submitted or not. It is conceded by counsel for the appellant that in order for their contention to hold that the proposed constitutional amendment making levee commissioners elective is ratified, that it is necessary for the court to overrule the above case.

With reference to the soundness of the decision of the court in the *Powell case, supra,* we will satisfy ourselves with referring the court to the history of the constitutional provision and the traditional policy of our state as demonstrated by Judge WHITFIELD in his able opinion in that suit. There is only one thing that we may refer to that may strengthen Judge WHITFIELD's position, if indeed his unanswerable argument as outlined above needs to be supported. The one thing, however, that we will call attention to is that in the case of *Howie* v. *Brantley,* 113 Miss. 794, our court adhered to the rule set down in the Powell case with reference to the necessity of a constitutional amendment receiving a majority of all the votes cast at an election at which such constitutional amendment is voted on. In the Brantley case, however, the court adopted as the method of determining the number of votes cast at the election the highest vote cast for any officer or measure voted for at the election. In other words, in the absence of an established method of determining the actual num-

ber of votes cast at an election the court assumed that the highest number of votes cast for any officer or measure was total vote cast at an election, but nevertheless the court recognized the rule that it is necessary for a constitutional amendment to receive not simply a majority of those voting for or against the particular amendment, but a majority of all the votes cast at the election. As to whether or not our court was correct in adopting this artificial standard for determining the number of votes cast at an election is not involved in the controversy here, for it is conceded that the proposed levee board amendment did not receive a majority of the votes cast at the election. The same method of determining the total vote was resorted to in the Jones case as was used in the Brantley case.

Chapter 231 of the Laws of 1922, Unconstitutional in that it provides for election of levee commissioners for a term of five years and seven months. The levee commissioner, Mr. Buford, who claims office in this suit, was elected by virtue of chapter 166 of the laws of 1922, providing for the election of levee commissioners. Under the terms of the act he was to hold from the time of his election in May, 1922, until the change of officers in January, 1927, a period of four years and seven months. The alleged constitutional provision under which this election was called provides that the levee commissioners shall hold their offices for a term of four years. In so many words, the amendment provides: "The term of office of said commissioners shall be four years, and they shall be selected in the manner prescribed by law. Therefore it will be seen that the provision in section 4 of chapter 165 of Act of 1922, providing for a four-year seven-month term is unconstitutional. And such act would be unconstitutional even if it were possible under section 231 of the Constitution of 1890 to make levee commissioners elective. Even if a statute could be passed under section 231 of the Constitution of 1890 providing for the election of levee com-

missioners by the people the provisions of section 252 of
the Constitution 1890 would apply to this office when
elected, and its provisions are as follows:

"The term of all elective officers under this Constitu-
tion shall be four years, except as otherwise provided here-
in.  A general election for all elective officers shall be held
on Tuesday next after the first Monday of November, A.
D. 1895, and every four years thereafter; provided, the
legislature may change the day and date of general elec-
tions to any day and date in October, November or Decem-
ber.

We therefore submit that the decision of the circuit court
was correct and should be affirmed.

COOK, J., delivered the opinion of the court.

Section 231 of the Mississippi Constitution of 1890 pro-
vides:

"When the terms of the present levee commissioners
shall expire, or whenever a vacancy shall occur or be about
to occur in either of said boards, the Governor shall make
appointments to fill vacancies, subject to the confirmation
of the senate.  The terms of office of said commissioners
shall remain as provided by law at the adoption of this
Constitution; but this provision shall not require the ap-
pointment of a commissioner for the Louisville, New Or-
leans & Texas Railway Company, except in the discretion
of the Governor as provided."

The legislature at its 1920 session submitted to the
qualified electors for ratification or rejection a proposed
amendment to section 231 of the Constitution so as to make
it read as follows:

"Sec. 231.   The levee commissioners, except the commis-
sioner for the Louisville, New Orleans & Texas Railroad
Company now the Yazoo & Mississippi Valley Railroad
Company, shall be elected by the qualified electors of the
respective counties or parts of counties from which they

may be chosen. The terms of office of said commissioners shall be four years, and they shall be selected in the manner prescribed by law. But nothing in this section shall require the appointment of a commissioner for the Louisville, New Orleans & Texas Railroad Company, except in the discretion of the Governor, as provided."

This proposed amendment was submitted to the qualified electors of the state at the general election held on the 2d day of November, 1920. The returns of this election were filed in the office of the secretary of state as required by law, and the certificate of the secretary of state shows that the total number of votes cast at such election were eighty-two thousand three hundred eighty, that being the highest number of votes cast for any candidate or measure voted for at such election. This certificate of the secretary of state also shows that at such election there was cast for the proposed amendment thirty-three thousand two hundred thirty-eight votes and twenty-six thousand seven hundred ninety-one against it. It thus appears that the proposed amendment received a majority of the qualified electors voting for or against it, but it did not receive a majority of the qualified electors voting at the election. At the 1922 session of the legislature a concurrent resolution attempting to insert the proposed amendment into the Constitution was adopted, this resolution merely reciting that the proposed amendment had received a majority of the qualified electors voting for or against the same. Pursuant to this supposed amendment, the Legislature enacted chapter 166 of the Laws of 1922, entitled:

"An act to fix the term of the levee commissioners for the Yazoo-Mississippi Delta levee district and the Mississippi levee district; to provide for the nomination of candidates for the office and for the election of the commissioners of said districts; and for the filling of vacancies in such office."

Acting under the provisions of this statute, an election was held in the Yazoo-Mississippi Delta levee district, and

Thomas E. Buford was elected to hold the office of levee commissioner for Tallahatchie county, for a period of four years and seven months. At the time of this election, E. V. Cato was holding the office of levee commissioner of Tallahatchie county under an appointment of the Governor.

Thereupon this suit was filed, it being a *quo warranto* proceeding on behalf of Thomas E. Buford, claimant to the office, against E. V. Cato, incumbent. The cause was submitted to the court upon documentary evidence and an agreed statement of the facts, and judgment was entered in favor of respondent Cato, and from this judgment this appeal was prosecuted.

The first contention of appellant is that, under section 273 of the Constitution, which provides how amendments thereto may be made, it is sufficient for the ratification of a proposed amendment that it shall appear that, of the entire vote cast for and against it, only a majority thereof were cast in favor of it.

More than twenty years ago, in the case of *State* v. *Powell,* 77 Miss. 543, 27 So. 927, 48 L. R. A. 652, this court decided that under section 273 of the Constitution, an amendment to be constitutionally adopted must receive a majority of all the votes cast at the election wherein the amendment is voted upon, and counsel frankly concede that the Powell Case must be overruled if the construction of section 273 for which they contend is sustained.

The provision of section 273 of the Constitution, with reference to the number of votes necessary for the adoption of a constitutional amendment, is as follows:

"If it shall appear that a majority of the qualified electors voting shall have voted for the proposed change, alteration, or amendment, then it shall be inserted by the next succeeding legislature as a part of this Constitution, and not otherwise."

It is well settled in this state that the question of whether a proposed constitutional amendment has been

adopted by the required majority of votes and has been properly inserted in the Constitution is one for judicial determination. *Green* v. *Weller,* 32 Miss. 650; *Sproule* v. *Fredericks,* 69 Miss. 898, 11 So. 472; *State* v. *Powell,* 77 Miss. 543, 27 So. 927, 48 L. R. A. 652; *State* v. *Jones,* 106 Miss. 522, 64 So. 241; *State* v. *Brantley,* 113 Miss. 786, 74 So. 662, Ann. Cas. 1917E, 723.

In the case of *State* v. *Powell, supra,* it was held that the majority required by section 273 of the Constitution of 1890 for the adoption of a constitutional amendment must be a majority of all the electors voting at the election, not simply all those voting on the adopton or rejection of the amendment submitted. This construction was followed in the cases of *State* v. *Jones, supra,* and *State* v. *Brantley, supra,* and for twenty-two years the construction placed upon this section in the Powell Case remained unchallenged, and no effect was made to amend the Constitution so as to modify or change the rule of construction there announced. It is common knowledge that during that period of time many proposed amendments which had received a majority of the votes cast for or against the same, but which had not received the votes of a majority of the electors voting at the election, have been permitted to sleep without any effort on the part of the legislature to insert them in the Constitution. Since the construction placed upon section 273 in the *Powell Case, supra,* was acquiesced in for this long period of time, and no effort was made to change or modify this construction by submitting an amendment to the section, we must presume that the representatives of the people, as well as the people themselves, were satisfied with the construction placed upon it. The fact of this long acquiescence is persuasive, but it would not be controlling if we were convinced that the construction placed upon the section in the Powell Case was erroneous.

The exact contention which is now so ably urged against the soundness of the decision in the Powell Case was pre-

sented by an array of able counsel when that case was before the court. We have given the opinion in that case a careful reconsideration in the light of the argument now advanced against it, and, upon the point here involved, we are convinced that the decision is correct, and that the construction there placed upon section 273 should be followed. In an able and exhaustive opinion in the Powell Case, Chief Justice WHITFIELD traced the history of the section from its appearance in our Constitution of 1817, and after an exhaustive analysis of the authorities in this state and other jurisdictions, it was held that the majority required by section 273, Constitution of 1890, for the adoption of a constitutional amendment, is a majority of all the electors voting at the election, and we cannot add anything to the logic or reasoning of the opinion in that case.

It is argued by counsel, however, that if it shall be held that a proposed amendment must receive a majority of the votes cast at an election, then there is no provision in our law whereby the total vote cast at the election may be determined. If such be true, then, as held in *State* v. *Brantley,* 113 Miss. 786, 74 So. 662, Ann. Cas. 1917E, 723— "In the absence of a correct certification of the number of electors voting at an election at which a constitutional amendment is voted upon, the court must presume that the highest number of votes cast for any officer or measure represented the number of votes cast at the election."

Counsel next contend that if it shall be held that the proposed amendment to section 231 of the Constitution was not constitutionally adopted, still chapter 166 of the laws of 1922 does not violate any provision of the Constitution and is a valid exercise of legislative power, or, in other words, that section 231 of the Constitution is not a limitation on the power of the legislature to provide for the election of levee commissioners and to provide a method of filling vacancies in such offices, but is simply a temporary expedient for the filling of these offices by appointment by the Governor, until such time as the legislature shall see fit to provide another method of selection.

The act of the legislature of 1884, creating the Yazoo-Mississippi Delta levee board, provided that the levee commissioners should be appointed by the Governor by and with the advice and consent of the Senate, and this act was in force when the Constitution of 1890 was adopted. Section 231 of the Constitution provides that, "when the terms of the present levee commissioners shall expire, or whenever a vacancy shall occur or be about to occur in either of said boards, the Governor shall make appointments to fill vacancies, subject to the confirmation of the Senate," and we think it is clear from the language of this section that the makers of the Constitution intended to continue the policy of selecting levee commissioners by appointment, and that the power to appoint such commissioners should thereafter be exercised by the Governor, by and with the consent of the Senate. For more than thirty years the executive department has construed this section as vesting in the Governor the power not only to fill vacancies caused by death, resignation, or removal, but also to appoint successors in office upon the expiration of the terms of the commissioners. The legislature, by failing for thirty years to attempt to provide another method of selection, and then submitting to the people a proposed amendment to section 231 so as to make levee commissioners elective, has construed this section as a limitation on its power. It is manifest that chapter 166 of the Laws of 1922 was not enacted by the legislature with any idea that such legislation could be constitutionally enacted without an amendment of section 231, but that it was enacted in pursuance of and to put into effect the supposed amendment to the section. The construction placed on this section by both of the co-ordinate branches of the state government is entitled to great weight, and should prevail unless it is clearly wrong. We think it is clearly right, and that the judgment of the court below should be affirmed.

*Affirmed.*

ETHRIDGE, J. (specially concurring).

I concur in the conclusion reached by the majority that the case should be affirmed and concur in all that has been said in the majority opinion with reference to the Constitutional amendment submitted by the legislature in 1920 to section 231 to the Constitution not being legally adopted, and that the *Powell Case,* 77 Miss. 543, 27 So. 927, 48 L. R. A. 652, should not be overruled.

I think also that chapter 166, Laws of 1922, is not constitutional because it fixes the terms of the levee commissioners at four years instead of two years (chapter 168, Laws 1884), proceeding upon the idea that the amendment to section 231 had carried and was lawfully a part of the Constitution. I think, however, it is within the legislative power to provide for the election of these levee commissioners without any additional constitutional amendment. I believe the terms of section 231, Constitution of 1890, properly construed, leaves the legislative power to provide for the election of levee commissioners unimpaired.

Section 231 of the Constitution of 1890 reads as follows:

"When the terms of the present levee commissioners shall expire, or whenever a vacancy shall occur or be about to occur in either of said boards, the Governor shall make appointments to fill vacancies, subject to the confirmation of the Senate. The terms of office of said commissioners shall remain as provided by law at the adoption of this Constitution; but this provision shall not require the appointment of a commissioner for the Louisville, New Orleans & Texas Railway Company, except in the discretion of the Governor as provided."

It will be noted that this section provides, "When·the terms of the present levee commissioners shall expire," indicating that it was the purpose of the constitutional convention to only provide finally and definitely for the immediate succession of those then in office. This language is followed by, "or whenever a vacancy shall occur or be

about to occur in either of said boards," indicating that
the ordinary vacancies caused by death or resignation or
from other disqualification for holding office, that the ap-
pointment should then be made by the Governor subject
to the confirmation of the Senate. Of course, under sec-
tion 103 of the Constitution the Governor should fill any
office where a vacancy existed where the legislature had
not provided some other means of filling the office. The
familiar rule of construction is that the legislature has all
power not denied to it by the Constitution. The using of
the term "present levee commissioners" clearly indicates
that it was not the purpose of the framers of the Constitu-
tion to make it apply to any other than the terms of "the
present (then) levee commissioners." If it had not been
the intent of the constitutional convention to limit the sec-
tion to the successors of the commissioners then in office,
the word "present" would and should have been omitted.

When the constitutional convention was dealing with
other appointments, the language was clear and explicit,
having no reference to present incumbents, but applying
generally to all appointments. For instance, section 145
of the Constitution, as originally drafted, provides:

"And the Governor, by and with the advice and consent
of the Senate, shall appoint one judge for and from each
district," etc.

Section 153 of the original Constitution provided: "The
judges of the circuit courts and of the chancery courts
shall be appointed by the Governor, with the advice and
consent of the Senate," etc.

The members of the constitutional convention were care-
ful in the use of language and used their words with effect
and for a purpose. So it seems to me that when the con-
vention used the term, "When the terms of the present
levee commissioners shall expire, . . . the Governor
shall make appointments to fill vacancies, subject to the
confirmation of the Senate," it meant that the legislature,
after the terms of the successors of the commissioners then

in office should expire, would have the right to deal with the subject at its discretion.

The framers of the Constitution no doubt thought that the schemes devised for the control of the state government by the white people would be effective, and that the legislature made up of a majority of its members of the white race would be able to deal with the subject in the light of the conditions and situations which confronted it.    In the recent case of *Miller, State Auditor,* v. *State ex rel. Russell, Dist. Atty.,* 94 So. 706, this court held that the legislature had all power not prohibited to it by the Constitution and that restrictions by implication would not be favored. Multiplied authorities to the same effect could be cited.